PJG Consent SSA (Rev 05/19/21)                                                                                                          Sandra Sheriff Deal
_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sandra Sheriff Deal, ) | C/A No. 0:20-3443-PJG |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v. ) | **FROM THE SOCIAL SECURITY** |
| ) | **ADMINISTRATION'S DENIAL OF** |
| Kilolo Kijakazi, Acting Commissioner of the ) | **SOCIAL SECURITY BENEFITS** |
| Social Security Administration,[1] ) | |
| ) | ☒ Affirmed |
| Defendant. ) | ☐ Reversed and Remanded |
| ) | |

      This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☐    Supplemental Security Income ("SSI"):  Plaintiff's age at filing:

☒    Disability Insurance Benefits ("DIB"):  Date last insured:  December 31, 2019

☐    Other:

Application date:  August 30, 2016

Plaintiff's Year of Birth:  1965

Plaintiff's alleged onset date:  September 28, 2015

**Part II—Social Security Disability Generally**

      Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

      A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the named defendant because she recently became the Acting Commissioner of Social Security.

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  November 20, 2019

In applying the requisite five-step sequential process, the ALJ found:

Step 1:        Plaintiff was engaged in substantial gainful activity during the relevant time period:
               ☐ Yes  ☒ No

Step 2:        ☐ Plaintiff has the following severe impairments:
               degenerative disc disease of the cervical spine status-post fusion and hearing loss.

               ☐ Plaintiff does not have a severe impairment.

Step 3:        ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:        Plaintiff's Residual Functional Capacity is as follows:
               [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently reach overhead; she could never climb ladders, ropes, or scaffolds; she could frequently stoop, kneel, crouch, and crawl; she must avoid even moderate exposure to noise; and she must avoid concentrated exposure to hazards.

               ☒ Plaintiff could return to his/her past relevant work.

Date of Appeals Council decision:  August 18, 2020

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  Biestek, 139 S. Ct. at 1154 (citation omitted).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

The ALJ failed to properly evaluate Ms. Deal's subjective complaints.  (Pl.'s Br., ECF No. 18 at 9.)

**Oral Argument:**

☐ **Held on _____ .**

☒ **Not necessary for disposition.**

**Summary of Reasons**

Plaintiff argues that the ALJ did not properly evaluate her testimony at the hearing regarding her neck pain, headaches, and discomfort in her left arm.  She specifically argues that this testimony is supported by a June 2019 MRI that showed worsening of her cervical spine and in light of additional medical records submitted to the Appeals Council which showed that an additional surgery on her cervical spine was ultimately performed.

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Id. (internal quotation omitted).  During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work."  Id.  In making these determinations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated

the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. ALJs are further instructed to

> limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id. at *11.

Further, "claims of disabling [symptoms] may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her [symptoms]." Craig, 76 F.3d at 595 (citations omitted); see also Arakas v. Comm'r, 983 F.3d 83, 95-96 (4th Cir. 2020) (finding that the ALJ disregarded "longstanding precedent and the agency's own policy by improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective evidence substantiating her statements"). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's [symptoms] and the extent to which it impairs [her] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

The ALJ summarized Plaintiff's hearing testimony as follows:

> [T]he claimant testified that she has chronic neck pain and headaches. She described problems using her left arm. She indicated that she has a burning sensation in her arms and numbness in her fingers. She stated that she must frequently sit down and rest. She reportedly relies on others to help with household chores. The claimant testified that she has hearing loss and cannot use a phone. She prefers to communicate using a computer.

(Tr. 14.) The ALJ then provided a summary of Plaintiff's medical records and weighed the opinions of Plaintiff's treating physician and the state agency physicians, finding that Plaintiff's symptoms were not as limiting as alleged based on the medical evidence, as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective evidence of record fails to support the degree of limitation alleged. The claimant is status-post anterior cervical diskectomy and fusion C4-6 completed in September 2015. (Exhibit 3F). A post-surgical cervical MRI in March 2016 showed a normal spinal cord, multilevel surgery and multilevel spondylosis with no convincing evidence of nerve root compression. Follow up notes from the Southeastern Spine Institute indicate that the claimant continued to report some posterior cervical pain and headaches. Physical examinations revealed painful cervical range of motion with flexion, extension, or rotation. She was neurologically intact, however. Stretching and strength training was recommended.
> …
> On follow up with Courtney Moldenhauer, PA-C, in November 2016, the claimant was doing quite well. (Exhibit 8F). She was no longer on any narcotic medication and her pain had improved. Her headaches were also more controlled on Relpax.

In December 2016, the claimant saw Dr. Adonteng Kwakye for consultative evaluation with complaints of neck pain and headaches. (Exhibit 7F). Of note, she denied chronic hearing loss. On examination, she was in no acute distress and ambulated without assistance. The neck was supple with no masses or tenderness. There was no muscle asymmetry, atrophy, or involuntary movements. The claimant had 5/5 grip strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. She had strong neck movement against resistance and good shoulder shrug. Dr. Kwakye diagnosed the claimant with neck pain status-post surgery.

In November 2017, the claimant saw Daniel Butler, PA-C, and reported being very active. (Exhibit 8F). On examination, the reflexes were 2+. There was some decreased grip in both upper extremities. She was neurologically intact. Cervical x-rays were ordered and showed no fracture or instability. The claimant was encouraged to continue with stretching, exercise, and strength training.

More recent records from Southeastern Spine Institute demonstrate that the claimant had a good response to cervical injection therapy. (Exhibit 13F). Dr. Leonard Forrest noted left triceps strength 4+/5. Pain did not seem to be a factor. Otherwise, the strength in the upper extremities was 5/5 and symmetrical. He recommended continuing with injection therapy and advised against further surgical intervention.

As for the opinion evidence, Dr. Kwakye stated that the claimant should be able to sit, walk, and/or stand for a full workday. (Exhibit 7F). He added that the claimant could lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions. Dr. Kwakye indicated that the claimant may be moderately limited in any activities that require full extension of the neck. I have given significant weight to Dr. Kwakye's opinions in this regard, as they are consistent with his clinical findings on examination and are well supported by the weight of the evidence of record.

The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also found that the claimant was not disabled albeit using a different rationale. Although these physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, these opinions do deserve some weight as they are supported by the objective medical evidence of record. The physical residual functional capacity submitted by Dr. Hurley Knott concluded that the claimant is able to perform work related activity at a light exertional level over an 8-hour workday, 5 days per week, with some limitations. (Exhibit 4A). I have accorded significant weight to Dr. Knott's opinion as it is well supported by the weight of the evidence of record and is consistent with the claimant's presentation upon examination.

> Because the claimant's allegations of such significant limitations and pain were not fully consistent with the medical evidence of record, I cannot accept the claimant's allegations that she is incapable of all work activity to be consistent with the record as a whole.

(Tr. 14-15.)

Plaintiff correctly observes that the ALJ did not specifically discuss a June 2019 cervical MRI that noted "potential/probably nerve root compression in exit foramina which show moderately severe/severe stenosis." (Tr. 597.) Rather, the ALJ summarizes the 2019 medical records as follows:

> More recent records [June 17, 2019 through July 17, 2019] from Southeastern Spine Institute demonstrate that the claimant had a good response to cervical injection therapy. (Exhibit 13F). Dr. Leonard Forrest noted left triceps strength 4+/5. Pain did not seem to be a factor. Otherwise, the strength in the upper extremities was 5/5 and symmetrical. He recommended continuing with injection therapy and advised against further surgical intervention.

(Tr. 15.) Plaintiff argues that records from the second half of 2019—which were submitted only to the Appeals Council—contradict the ALJ's summary and demonstrate that the injection therapy was no longer alleviating her pain, and that Plaintiff underwent additional spinal surgery on November 18, 2019. Plaintiff argues that her hearing testimony is also corroborated by this additional evidence. With regard to the additional medical records, the Appeals Council stated that "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (Tr. 2.) No further explanation was provided.

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review "if the additional evidence is (a)

new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."[2] Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Effective January 17, 2017, the claimant is required to show good cause for not informing the ALJ about or submitting the evidence prior to the hearing. See 20 C.F.R. § 404.970(b).

The United States Court of Appeals for the Fourth Circuit has explicitly held that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision." Meyer v. Astrue, 662 F.3d 700, 702 (4th Cir. 2011). In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Id. at 704 (alterations in original) (quoting Wilkins, 953 F.2d at 96). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted. Meyer, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The Meyer Court recognized, however, that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be

---

[2] In this case, the parties do not appear to dispute that the additional evidence relates to the period on or before the date of the ALJ's decision.

unsupported by substantial evidence.  See id. (discussing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

The Commissioner acknowledges that Plaintiff's symptoms "briefly worsened" in 2019 but notes that this exacerbation occurred as a result of Plaintiff's involvement in a motor vehicle accident.  (Def.'s Br., ECF No. 20 at 6.)  The Commissioner argues that, although the 2019 medical records "demonstrate a brief exacerbation of symptoms," they are insufficient to meet the twelve-month durational requirement as defined in 42 U.S.C. § 423(d)(1)(A).[3]  (Id. at 7.)

Review of the 2019 medical records shows that Plaintiff was seen on June 17, 2019—eleven days after she was involved in a motor vehicle accident on June 6, 2019.  The records note Plaintiff's medical history prior to the accident: that after a trial of conservative treatment, Plaintiff had a cervical discectomy/fusion at C4-5 and C5-6 in September 2015; that Plaintiff reported significant improvement as a result of that surgery; and that her symptoms in her neck and upper back remained at a low level of pain (0-4) as long as she had a massage about once a week.  (Tr. 589-90.)  As mentioned above, the MRI performed on June 17, 2019 showed "potential/probable nerve root compression in exit foramina which show moderately severe/severe stenosis," (Tr. 597),

---

[3] The Commissioner also argues that the records should not be considered because Plaintiff has failed to demonstrate good cause for her failure to timely submit them to the ALJ.  (Def.'s Br., ECF No. 20 at 7.)  Review of the hearing testimony shows that Plaintiff specifically testified as to the existence of much of this evidence and that the ALJ agreed to allow submission of any records through September 25, 2019, but that Plaintiff failed to submit any additional evidence.  (Tr. 78-83.)  Plaintiff has provided no explanation for her failure to submit these records to the ALJ for review.  Although the Meyer Court recognized that remand may be required if evidence submitted to the Appeals Council fills an evidentiary gap, 20 C.F.R. § 404.970 was subsequently amended to close the record at the time of the ALJ hearing barring a showing of "good cause."  The Appeals Council did not address whether Plaintiff had provided good cause for not informing the ALJ about or submitting the evidence prior to the hearing.  Rather, as stated above, the only reason it provided for not exhibiting the additional evidence was its finding that the evidence "does not show a reasonable probability that it would change the outcome of the decision."  (Tr. 2.)  Regardless, the court need not address this issue because, for the reasons that follow, the court agrees that the additional evidence was unlikely to change the outcome of the ALJ's decision.

and Plaintiff complained of pain in her neck, upper back, and left arm at levels between 4 and 8. Records from June, July, August, September, and October 2019 show that additional conservative treatment in the form of epidural injections and physical therapy was prescribed (Tr. 585, 582, 51, 50, 47), but that Plaintiff's symptoms in her neck and left arm were not improving. On October 29, 2019, Plaintiff was recommended for an additional cervical surgery (Tr. 46), which was performed November 18, 2019. During Plaintiff's post-operative visits in December 2019, it was noted that she was progressing well overall. (Tr. 43-44.) On December 31, 2019, Plaintiff reported her pain level back down to a 2, and she was noted to have 5 of 5 strength, normal muscular tone and bulk, no abnormal muscle movements, normal gait and station, and good x-rays. (Tr. 43.) Several of the medical records note that Plaintiff's symptoms and the worsening shown in the 2019 MRI were "[to] a reasonable degree of medical certainty" caused by the June 6, 2019 motor vehicle accident. (Tr. 590, 42, 47.)

The court finds persuasive the Commissioner's argument that the additional evidence submitted by Plaintiff to the Appeals Council was unlikely to change the outcome of the ALJ's decision. While this evidence clearly shows a worsening of Plaintiff's symptoms, the evidence indicates that the exacerbated symptoms were caused by a motor vehicle accident; that Plaintiff's exacerbated symptoms lasted for less than a twelve-month period of time; that Plaintiff was ultimately surgically treated; and that following the surgery, Plaintiff's symptoms were reduced once again to comparable pre-accident levels as self-reported by Plaintiff. Accordingly, the court finds that there is no reasonable probability that consideration of these records would have changed the outcome of the ALJ's decision finding Plaintiff not disabled. See, e.g., Meyer, 662 F.3d at 707 (recognizing that in some cases the record would clearly show that the additional evidence submitted to the Appeals Council did not cause the ALJ's decision to be unsupported by substantial

evidence) (discussing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)); 20 C.F.R. § 404.970(a)(5) (requiring a claimant to show that "there is a reasonable probability that the additional evidence would change the outcome of the decision"); 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

Similarly, the court finds that the ALJ's failure to discuss the 2019 MRI is harmless error and does not render his opinion unsupported. As previously discussed, this exacerbation of Plaintiff's symptoms as shown in the MRI was determined to be a direct result of Plaintiff's motor vehicle accident, which was substantially resolved via surgery several months later. Moreover, the ALJ properly discredited Plaintiff's subjective complaints, finding that they were inconsistent with the opinion evidence and undermined by the medical records which showed that her symptoms were generally well controlled with cervical injection therapy, stretching, exercise, and strength training. Accordingly, careful review of the ALJ's decision as a whole and the record reveals that the ALJ specifically considered Plaintiff's subjective reports and testimony and discussed extensively the medical records and opinion evidence. Further, the ALJ applied the requisite factors and offered specific reasons and support for discounting Plaintiff's allegations of disabling limitations in accordance with applicable law. See Craig, 76 F.3d 585, 594-95 (4th Cir. 1996) (detailing to two-step process for evaluating subjective complaints); 20 C.F.R. § 404.1529(c)(3) (listing the factors to considering in evaluating subjective complaints); SSR 16-3p, 2017 WL 5180304, at *10 (providing the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the

adjudicator evaluated the individual's symptoms"); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  Based on the foregoing, Plaintiff has failed to demonstrate that the ALJ's evaluation of her subjective complaints was unsupported by substantial evidence or controlled by an error of law.

## ORDER

☒ **Affirmed.  Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☐ **Reversed and remanded pursuant to ☐ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

_____
October 6, 2021                      Paige J. Gossett
Columbia, South Carolina             UNITED STATES MAGISTRATE JUDGE